UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dr. Stephen H. Christensen, D.D.S.,

   Plaintiff,

v.              Civ. No. 06-4319 (JNE/JJG)
               ORDER
Metropolitan Life Insurance Company
(TNE/MET), Successor in Interest by
Merger to New England Mutual Life
Insurance Company,

    Defendant.

_____

R. Daniel Rasmus, Esq., Christensen, Laue & Ramus, P.A., appeared on behalf of Plaintiff Dr. Stephen H. Christensen, D.D.S.

Terrance J. Wagener, Esq., Krass Monroe, P.A., appeared on behalf of Defendant Metropolitan Life Insurance Company (TNE/MET), Successor in Interest by Merger to New England Mutual Life Insurance Company.

_____

   This is an action for declaratory relief and damages brought by Dr. Stephen H. Christensen, D.D.S., against Metropolitan Life Insurance Company (Met Life), successor in interest by merger to New England Mutual Life Insurance Company (New England). Christensen seeks a declaration that he is entitled to lifetime disability income benefits under a disability insurance policy he purchased from New England and damages for breach of contract, breach of covenant of good faith and fair dealing, violations of state consumer protection statutes, and misrepresentation. The case is before the Court on cross-motions for summary judgment. For the reasons set forth below, Met Life's motion is granted in part and denied in part and Christensen's motion is denied.

## I.    BACKGROUND

Stephen Christensen practiced restorative dentistry as a Prosthodontist for over thirty-five

years.  In September 1988, Christensen purchased Disability Income Policy #D139393 (the

Policy) from New England.  The Policy provides "monthly income benefits for total disability of

the insured."  Section 1 of the Policy is central to the parties' motions and is reproduced in its

entirety in Figure 1.

**Figure 1**



| 1. Policy Schedule | | | Owner: As named in the Application or as later changed. See the Owner Section of the Policy. | | |
|---|---|---|---|---|---|
| **Policy Number** D139393 | **Age** 47 | **Sex** Male | | | |
| **Policy Date** November 10, 1988 | **Date of Issue** November 10, 1988 | | | | |
| **Maximum Monthly Benefit** $5,000.00 | **Waiting Period** 90 Days | | **Residual Disability Qualification Period** 90 Days | | |
| **Maximum Period for Benefits** To policy anniversary on or next following insured's 65th birthday, but not less than 2 years. | | | | | |
| **Schedule of Benefits** | | | | | |
| Disability Income (DI) | Maximum Monthly Benefit | | | | $5,000.00 |
| Lifetime Disability Income After Age 65 (LDI) | Monthly Income | | | | $5,000.00 |
| Proportionate Disability Income (PDI) | See Rider | | | | |
| **Schedule of Annual Premiums** | | | | | |

| Policy Years | Total | DI | LDI | PDI |
|---|---|---|---|---|
| First  3 | $4,112.75 | 2,824.75 | 1,097.00 | 191.00 |
| 4 thru 18 | 4,608.75 | 3,320.75 | 1,097.00 | 191.00 |
| 19 thru 28* | | | | |

\#   If policy is renewed in accordance with conditional renewal provisions, the premium for each renewal will be based on the insured's attained age and premium rates in use by the company at the time of renewal.

Section 2 of the Policy, includes the following provision:

**The Contract**

The Policy, which includes the attached Application, is the entire contract
between you and the Company.  All Riders are listed in Section 1.  No change in
or waiver of the provisions of the Policy is valid unless the change or waiver is
signed by the President or the Secretary of the Company.

The Policy includes a single-page document titled "Rider: Lifetime Disability Income after Age 65" (LDI Rider).  The parties dispute whether the LDI Rider is part of the Policy.  The LDI Rider states in part:

> **The Company** agrees to pay monthly income benefits to the Owner for a Total Disability of the Insured which continues beyond the Maximum Period for Benefits: …
>
> - Which results from a sickness and which started before the policy anniversary on or next following the 60th birthday of the Insured.

The LDI Rider also contains the following provision:

> **Contract**
>
> A copy of the application for this Rider is attached to and made a part of the Rider.  This Rider is made a part of the Policy to which it is attached if the Rider is listed in the Policy Schedule.

In May 2002, Christensen was diagnosed with a brain tumor.  He was sixty-one years old.  Following surgery to remove the tumor, Christensen was unable to return to his dental practice.  He applied for disability income benefits under the Policy and began receiving $5,000 per month in September 2002.

On September 23, 2002, Met Life Lead Customer Service Representative Janice King sent a letter to Christensen's attorney detailing Christensen's disability insurance coverage under the Policy.  King's letter stated the following:

> His Disability Income coverage is as follows: [the Policy] pays a monthly benefit of $5,000.  The waiting period is 90 days and the benefit period goes to the policy anniversary date after age 65.  (There was a lifetime rider on this policy, but in order for it to apply, the disability must begin prior to the policy anniversary on or next following the sixtieth birthday of the insured.  That date was 11/10/01).

In November 2002, King provided verification of the amount and duration of Christensen's disability income benefits under the Policy to two financial institutions in connection with

Christensen's mortgage refinancing activities.  On both occasions, King indicated that Christensen's disability income benefits were payable at $5,000 per month "to age 65."

The following year, Christensen again requested a verification of disability income benefits from King in connection with refinancing activities.  King's verification letter, dated August 11, 2003, stated that "[the Policy] provides monthly benefits of $5,000 per month after a waiting period of 90 days.  Benefits will continue for your lifetime."  On December 23, 2003, King sent another income verification letter to Christensen stating benefits under the policy were "$5,000 per month for Lifetime."  Christensen asked his insurance representative, Gregory Davis, to verify and confirm the information in King's letter.  Davis's assistant, Mary Capra, contacted Met Life by telephone.  According to Capra, customer service representative Jane Hunt verified that Christensen's disability income benefits would continue for his lifetime if his disability continued.  Met Life disputes Capra's account and Hunt testified at her deposition that she does not recall offering any such opinion about Christensen's benefits under the Policy.

In April 2006, Met Life sent Christensen a letter advising him that his monthly disability payments would terminate on the policy anniversary following his 65th birthday pursuant to the terms in the Policy.  Met Life discontinued the payments in November 2006.  Christensen subsequently brought this action against Met Life claiming he is entitled to lifetime disability income benefits under the Policy and that Met Life wrongfully discontinued payments of those benefits.  Met Life asserts that the Policy provides disability income benefits to age 65, and only conditionally provides lifetime disability income benefits pursuant to the terms of the LDI Rider.  Met Life asserts Christensen does not qualify for lifetime benefits under the terms of the LDI Rider.  Each party now seeks summary judgment on all claims.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A.   Construction of the Policy language

The parties disagree about the proper construction of the Policy's language. Met Life argues that the plain language of the Policy unambiguously provides lifetime disability income benefits pursuant to the terms of the LDI Rider. Christensen contends the LDI Rider is not part of the Policy. Christensen argues that the Policy language unambiguously provides disability income benefits for his lifetime without regard to any rider, and asserts that he paid an additional premium under the Policy in exchange for an extension of the maximum period for benefits to include monthly disability income payments for his lifetime.[1]

---

[1]   Christensen alternatively argues that if the Court determines that the LDI Rider applies to the Policy, he is still entitled to lifetime disability income because the sickness that led to his disability began at a time when he was eligible for benefits under the terms of the LDI Rider.

The Court applies general contract principles when construing the language of an insurance policy.  *See Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998).[2]  In construing an insurance contract, the policy must be considered as a whole.  *See Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986).  If a contract is clear and unambiguous, then the language is given its plain and ordinary meaning.  *Id.*  However, if the policy is, by its language alone, susceptible to more than one reasonable interpretation, it is ambiguous.  *See Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 34 (Minn. 1979); *ICC Leasing Corp. v. Midwestern Mach. Co.*, 257 N.W.2d 551, 554 (Minn. 1977).  Whether the language of an insurance policy is ambiguous is a question of law.  *Columbia Heights Motors*, 275 N.W.2d at 34.  Here, the Court concludes that when the Policy is considered as a whole, the term "listed" in Section 2 and in the LDI Rider is susceptible to more than one reasonable interpretation.

On the one hand, Section 1 of the Policy identifies the names of three separate disability income benefits provided under the Policy.  Two of these names correspond to the names of riders that are available for purchase and the documents describing the terms and conditions of these riders are included at the end of the general policy documents.  In addition, Christensen's policy application includes a check mark next to the item "Rider: Lifetime Disability Benefit" and a check mark next to "Other," which is then defined as "Proportionate Disability Income

---

The alternative claim lacks merit.  The language of the LDI Rider is unambiguous and, if applicable, disqualifies Christensen for lifetime disability income benefits given the date of onset of his disability.  *See Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986).  Accordingly, summary judgment is granted to Met Life on Christensen's claim seeking a declaration that Met Life breached the terms of the LDI Rider (Count V).

[2]     There is no dispute that Minnesota substantive law governs the Policy at issue here.  *See Wessman v. Mass. Mut. Life Ins. Co.*, 929 F.2d 402, 404 (8th Cir. 1991).

Rider" (PDI Rider).  A reasonable construction of the term "listed" in Section 2 and in the LDI Rider is "to give the names" or "to set forth a series of names," such that the LDI Rider and the PDI Rider are "listed" in the Schedule of Benefits in Section 1 of the Policy and apply to Christensen's disability income claims.

Alternatively, in Section 1, the Policy Schedule, the term "See Rider" is included in the entry for proportionate disability income benefits.  There is no such designation in the entry for lifetime disability income after age 65.  Due to the difference in these designations, a reasonable construction of the term "listed" in Section 2 and in the LDI Rider is "enumerated as a rider" or "indentified as a rider" such that the PDI Rider is a listed rider in the Schedule of Benefits but the LDI Rider is not.  Under this construction, the LDI Rider does not apply to Christensen's disability claims.  Rather, lifetime benefits are payable under the terms of the Policy in exchange for payment of the LDI premium identified in the Schedule of Annual Premiums portion of Section 1.[3]

While the Court does not consider extrinsic evidence when determining if a contract is ambiguous, *see In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 498 (Minn. 1995), because the Court has found that the language of the Policy is ambiguous, extrinsic evidence can be considered to determine the intent of the parties and clarify the ambiguity.  *See Wessman v. Mass. Mut. Life Ins. Co.*, 929 F.2d 402, 407 (8th Cir. 1991); *Nord v. Herreid*, 305 N.W.2d 337, 340 (Minn. 1981); *ICC Leasing Corp. v. Midwestern Mach. Co.*, 257 N.W.2d 551, 554 (Minn. 1977).  The construction and effect of a contract are questions of law for the court, but "where ambiguity exists, and construction depends upon extrinsic evidence, the proper

---

[3]     The Schedule of Annual Premiums section of the Policy Schedule is also ambiguous as it does not indicate whether the $1,097 annual premium for "LDI" represents payment for benefits under the LDI Rider or payment in exchange for the continuation of disability income benefits for Christensen's lifetime.

construction is a question of fact for the jury." *Lewis v. Equitable Life Assur. Soc. of the U.S.*, 389 N.W.2d 876, 884 (Minn. 1986) (citing *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979)).

The extrinsic evidence in this case is not conclusive as to the parties' intent and instead raises issues of fact regarding the proper construction of the Policy language regarding the availability of lifetime disability income benefits. While the Policy application, which is signed by Christensen, includes a request for the inclusion of the LDI Rider, Christensen testified at his deposition that his insurance representative, Barry Effress, filled out the Policy application and then provided it to Christensen for signature.[4] According to Christensen, at the time he purchased the Policy in 1988, he understood the Policy to provide lifetime income benefits if he became disabled regardless of the time that he became disabled. *See ICC Leasing*, 257 N.W.2d at 554 (consideration of the parties' conversations and conduct during preliminary negotiations proper to aid in the construction of ambiguous contract).

Evidence of the subsequent conduct of Met Life's customer service representatives raise uncertainty about Met Life's intent in issuing the Policy to Christensen in exchange for his payment of the premiums identified in the Policy Schedule. *See Wessman*, 929 F.2d at 407 (where parties to a contract have given it a practical construction by their conduct, as by acts in performance thereof, such construction may be considered by the court in determining its meaning and in ascertaining the mutual intent of the parties) (citations omitted); *O'Connell v. Ward*, 153 N.W. 865, 866 (Minn. 1915) (consideration of surrounding circumstances for the purposes of determining intent and meaning of ambiguous language of a contract proper). For example, over the course of several years, Met Life Lead Customer Service Representative

---

[4]    According to the parties, Mr. Effress is deceased.

Janice King provided contradictory interpretations of benefits provided under the Policy. King represented that lifetime disability income benefits were unavailable to Christensen under the terms of the LDI Rider. King subsequently represented that the lifetime income benefits would be paid pursuant to the terms of the Policy without making any reference to the LDI Rider. King testified that she would have consulted the Schedule of Benefits in Section 1 when she provided the benefit verifications to Christensen, and the Court has already determined that ambiguous Policy language is susceptible to more than one reasonable interpretation of the Schedule of Benefits. Although King testified that she made a mistake in 2003 when she twice indicated that the Policy would pay Christensen disability income benefits for his lifetime, King's representations raise an issue of fact as to the intent of the parties regarding the availability of lifetime disability income benefits under the Policy.

In addition, Mary Capra's deposition testimony indicates that she received telephonic verification of Christensen's lifetime disability income benefits from customer service representative June Hunt on August 13, 2003. Hunt testified that she does not recall providing verification of Christensen's lifetime disability income benefits to Capra and that she would have declined to respond to such an inquiry.

Finally, Met Life's internal documents indicate that on March 5, 2004, the administration of Christensen's disability income claim was referred to the "extended duration unit." The referral form, which bears the signature of Janice King, states that the reason for the referral as "condition unlikely to change, age of insured." The form also indicates that that the Policy currently provides benefits in the amount of "$5,000 base" and provides a "Max Ben Date" of "lifetime." A notation in the margin indicates that on November 10, 2006, "base ends. Life begins." From this extrinsic evidence of the circumstances surrounding the application for the

Policy and its subsequent implementation and administration by Met Life, the Court concludes that the proper construction of the ambiguous language of the Policy is a question of fact for a jury.  *See Lewis*, 389 N.W.2d at 884.

**B.      Claim for declaratory judgment for breach of contract and breach of covenant of good faith and fair dealing and damages**

To obtain declaratory judgment in his favor on his breach-of-contract and breach of covenant of good faith and fair dealing claims, Christensen must first show that a contract was formed by the acceptance of a specific and definite offer that was supported by consideration, that he has performed any conditions precedent, and that Met Life failed to perform according to the terms of the contract.  *See Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006).  To recover damages for a breach of contract Christensen must prove that Met Life's breach caused his damages.  *Nguyen v. Control Data Corp.,* 401 N.W.2d 101, 105 (Minn. Ct. App. 1987).

Here, Christensen's claim for a declaration and for damages regarding Met Life's alleged breach of contract and breach of covenant of good faith and fair dealing cannot be resolved until after a determination has been made regarding the proper construction of the terms of the Policy.[5]  The language of the Policy regarding the availability of lifetime disability income benefits and the applicability of the LDI Rider is ambiguous and the extrinsic evidence in the record is inconclusive as to the proper construction of the Policy.[6]  Therefore, whether Met Life

---

[5]      Under Minnesota law, the implied covenant of good faith and fair dealing does not extend to actions beyond the scope of the underlying contract.  *See In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d at 503.

[6]      This distinguishes the instant case from the cases cited by Met Life as those cases involve unambiguous contract language.  *See, e.g.*, *Syverson v. Firepond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004); *Employers Mut. Cas. Co. v. Wendland & Utz, Ltd.*, 351 F.3d 890, 895 (8th Cir. 2003); *Anderson v. Minn. Ins. Guar. Assoc.*, 534 N.W.2d 706, 709 (Minn. 1995).

has failed to perform under the Policy remains an unresolved issue of material fact.

Consequently, summary judgment in favor of either party is unwarranted on Christensen's claim

for declaratory judgment and damages for breach of contract and breach of covenant of good

faith and fair dealing.[7]

## C.      Claims for violations of Minnesota consumer protection statutes

Christensen claims that Met Life violated Minnesota's Prevention of Consumer Fraud

Act, Minn. Stat. §§ 325F.68-.70 (2006).  Section 325F.69 of that Act provides, in relevant part:

> The act, use, or employment by any person of any fraud, false pretense, false
> promise, misrepresentation, misleading statement or deceptive practice, with the
> intent that others rely thereon in connection with the sale of any merchandise,
> whether or not any person has in fact been misled, deceived, or damaged thereby,
> is enjoinable ….

Minn. Stat. § 325F.69, subd. 1 (2006).[8]

Christensen also alleges that Met Life violated Minnesota's Uniform Deceptive Trade

Practices Act, Minn. Stat. § 325D.43-.48 (2006).  The Uniform Deceptive Trade Practices Act

---

[7]      The Court construes Christensen's equitable and promissory estoppel claim (Count II) as
an alternative theory of recovery under his breach of contract claim.  *See* Complaint at ¶ 56 ("In
the event Dr. Christensen is not allowed to receive LDI Benefits after age 65, he is entitled to the
damages that he suffered as a direct and proximate result of the promises made by Defendant and
upon which he relied to his detriment.").  This theory of recovery is inapposite in this case.
Should the jury conclude the LDI Rider is not "listed" in Section 1 of the Policy, Christensen
would be entitled to damages pursuant to his breach of contract claims.  Should the jury conclude
the LDI Rider applies to the Policy, Christensen would not be entitled to lifetime benefits under
the Policy and could not then invoke the doctrine of estoppel in an attempt to obtain lifetime
benefits because "[t]he doctrine of estoppel may not be used to enlarge the coverage of an
insurance policy."  *Shannon v. Great Am. Ins.*, 276 N.W.2d 77, 78 (Minn. 1979); *see, e.g.*, *Cont'l
Cas. Co. v. Advance Terrazo & Tile Co.*, 462 F.3d 1002, 1010 (8th Cir. 2006); *Minn.
Commercial Ry. Co. v. Gen. Star Indem. Co.*, 408 F.3d 1061, 1063 (8th Cir. 2005); *Alwes v.
Hartford Life & Accident Ins. Co.*, 372 N.W.2d 376,379 (Minn. Ct. App. 1985) ("The *Shannon*
principle intends to prevent insured persons from 'creating' coverage which does not exist.").

[8]      The term "merchandise" has been interpreted to include insurance policies.  *See Force v.
ITT Hartford Life & Annuity Ins. Co.*, 4 F. Supp. 2d 843, 859 (D. Minn. 1998).

lists a variety of ways in which one engages in a deceptive trade practice in the course of business, including "(5) represent[ing] that ... goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; ... [or] (13) engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44, subd. 1(5), (13) (2006).

In support of these claims, Christensen relies upon his allegations of false, misleading, and deceptive statements by Met Life's agents regarding the availability of lifetime disability income benefits under the Policy. Met Life asserts Christensen's statutory fraud claims fail as a matter of law because the alleged false, misleading, or deceptive statements can be found to be so only through an unreasonable interpretation of the unambiguous language of the Policy and LDI Rider. The Court has already concluded that the proper construction of the Policy regarding the availability of lifetime disability income benefits is a factual issue to be decided by a jury. It follows that the issue of whether any alleged statements by Met Life regarding the availability of lifetime benefits were actually false, misleading, or deceptive misrepresentations of lifetime benefits available under the Policy, or statements likely to create confusion or misunderstanding about those benefits is also an issue of fact. Accordingly, summary judgment in favor of either party on Christensen's statutory claims is unwarranted.

**D.      Claims for negligent and reckless misrepresentation**

Negligent misrepresentation may occur if a person, having a pecuniary interest in a transaction, supplies false information for the guidance of others in connection with the transaction and "fails to exercise reasonable care or competence in obtaining or communicating the information." *Colangelo v. Norwest Mortg., Inc.*, 598 N.W.2d 14, 19 (Minn. Ct. App. 1999) (quoting *Bonhiver v. Graff*, 248 N.W.2d 291, 298 (Minn. 1976)). Reckless misrepresentation

occurs when "a misrepresenter speaks positively and without qualification, but either is
conscious of ignorance of the truth, or realizes that the information on which he or she relies is
not adequate or dependable enough to support such a positive, unqualified assertion."
*Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn. 1986).  Both torts require, at a minimum, a
misrepresentation.  *See Williams v. Tweed*, 520 N.W.2d 515, 517 (Minn. Ct. App. 1994) (citing
*Florenzano*, 387 N.W.2d at 177-78 n. 2, 3, & 5 (Simonett, J., concurring)).

Once again, Christensen point to allegedly false statements made by Met Life's agents
regarding the availability of disability income benefits for his lifetime under the Policy.  Met Life
reasserts its contentions that no false or misleading statements were made given the
unambiguous language of the Policy.  It is undisputed that Met Life's customer service
representative Janice King informed Christensen that he was eligible to receive disability income
benefits under the Policy for the duration of his life.  For the reasons already stated, the issue of
whether or not this information constitutes false or misleading representations of the availability
of lifetime disability income benefits under the Policy is an issue of fact for a jury.  Thus,
summary judgment in favor of either party on Christensen's misrepresentation claims is
inappropriate.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT
IS ORDERED THAT:

1.  Metropolitan Life Insurance Company's motion for summary judgment
    [Docket No. 18] is GRANTED AS TO COUNT V AND DENIED AS TO
    COUNTS I, III, IV, VI, VII and VIII.

2.  Count II of the Complaint is DISMISSED.

3.  Count V of the Complaint is DISMISSED WITH PREJUDICE.

4.      Stephen H. Christensen's motion for summary judgment [Docket No. 28] is DENIED.

Dated:  February 22, 2008

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge